## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 08 C 2830 |
| v. | ) ) | Judge Lefkow |
| DIAMOND CONCRETE SPECIALIST, INC., an Illinois corporation, | ) ) ) | |
| Defendant. | ) | |

## MOTION FOR ORDER OF DEFAULT AND TO COMPEL AN AUDIT

Now come Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health

and Welfare Department of the Construction and General Laborers' District Council of Chicago

and Vicinity and James S. Jorgensen (collectively referred to hereinafter as the "Funds"), by and

through their attorney, Patrick T. Wallace, and hereby move for the Order of Default and to

Compel an Audit against Defendant Diamond Concrete Specialist, Inc. (hereinafter "Diamond

Concrete" or the "Company").  In support of this Motion, Plaintiffs state as follows:

1.      Plaintiffs filed their Complaint on June 11, 2008 to compel the Company to obtain

and maintain a surety bond and to submit its books and records to an audit for the period of July

6, 2007 forward.

2.      Plaintiffs' process server made several attempts to serve Defendant at the office of

the Registered Agent but was unable to effect service.  Accordingly, Plaintiffs served Summons

and Complaint on Defendant Preferred Concrete by serving the Illinois Secretary of State and

mailing copies certified, return receipt requested to the two last know mailing addresses of the Company's representative in accordance with 805 ILCS 5/5.25 (b)(1) and (c) on August 22, 2006.  A true and accurate copy of the Affidavit of Plaintiffs' process server is attached hereto as Exhibit A.  A true and accurate copy of the Affidavit of Compliance filed with the Secretary of State is attached hereto as Exhibit B.

       3.      The Defendant has failed to answer or otherwise plead, and is in default.

       4.      Pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1132(g)(2), Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. §185, the Agreement, and the Funds' respective Agreements and Declarations of Trust, Defendant Diamond Concrete should be ordered to submit its books and records to an audit for the period July 6, 2007 forward and to obtain and maintain a surety bond.  See Affidavit of John Bronson filed contemporaneously herewith and attached hereto as Exhibit C, ¶¶ 4-5.

WHEREFORE, Plaintiffs respectfully request that this Court enter and Order finding Defendant Diamond Concrete Specialist, Inc. in default, ordering the Defendant to submit the Company's books and records to an audit for the period of July 6, 2007 forward and ordering the Defendant Company to obtain and maintain a surety bond on accordance with the terms of the Agreement.  Plaintiffs further request that this Court retain jurisdiction to enter Default Judgment in Sum Certain upon conclusion of the audit including all unpaid contributions, interest, liquidated damages, audit costs, and Plaintiffs' attorneys' fees and costs pursuant to the terms of

the collective bargaining agreement, the Funds' respective Agreements and Declarations of Trust,

and 29 U.S.C. § 1132(g)(2).

July 22, 2008                                    Laborers' Pension Fund, et al.


                                                By:  /s/Patrick T. Wallace

Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540
(312) 692-1489 (fax)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LABORERS' PENSION FUND; ET AL** | Court Date: |
| PLAINTIFF(S) | Case No.<br>**08 CV 2830** |
| VS. | |
| **DIAMOND CONCRETE SPECIALIST, INC.** | SERVICE DOCUMENTS:<br>**SUMMONS & COMPLAINT** |
| DEFENDANT(S) | |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

Affiant states s(he) **DISCONTINUED ATTEMPTING SERVICE** upon **DIAMOND CONCRETE SPECIALIST, INC.** at **14458 KARLOV ST, MIDLOTHIAN, IL 60445** after due search, careful inquiry and diligent attempts for the reason detailed below.

5/21/2008 5:15 PM - Spoke with 30 yr old male who said Joseph wasn't home, not usually until after 6:30 pm everyday. He said he had nothing to do with Diamond Comcrete, he did not say he was also Joseph.
5/24/2008 6:15 PM - No answer at door, no movement in home. 1 light on, no mail in box.
5/25/2008 8:08 PM - No answer at door, no lights on, no movement in home. No cars in drive of house.
5/28/2008 7:53 PM - No answer at door, no mail, no movement. 1 light on, dog is present, left delivery notice.
5/31/2008 11:00 AM - Spoke with female resident of home, defendant is not home. I left a # for him to call when he is available, she did confirm he doesn't get home till after 630 pm on weekdays.
6/5/2008 6:38 PM - Spoke with same female resident, defendant not home, asked her to make sure he calls me. defendant will not call.
6/9/2008 9:01 PM - Spoke with 7-8 year old boy, said Joe wasn't home, didnt know when he would be. I believe the first guy I spoke to may have been defendant and lied... and now is avoiding service. There is a Joseph Jr & a Joseph Sr. listed at this residence.

I declare under penalties of perjury that the information contained herein is true and correct.

_Robt Harenberg_

**Robert Harenberg, Lic #: 117-001119**
**Judicial Attorney Services, Inc.**
**2100 Manchester Rd., Ste 900**
**Wheaton, IL 60187**
**(630) 221-9007**

SUBSCRIBED AND SWORN to before me this 10th day of June, 2008

_Joan C. Harenberg_

OFFICIAL SEAL
JOAN C HARENBERG
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/13/09

NOTARY PUBLIC

CLIENT NAME:                                    ORIGINAL PROOF OF SERVICE                          TRACKING #
**Laborers Pension and Welfare Funds***                                                            38721
**FILE #:**



| Form **BCA-5.25** (Rev. Jan. 2003) | AFFIDAVIT OF COMPLIANCE FOR SERVICE ON SECRETARY OF STATE UNDER THE BUSINESS CORPORATION ACT | File # 6554-044-4 |
|---|---|---|

| Jesse White Secretary of State Department of Business Services Springfield, IL 62756 217-524-6748 www.cyberdriveillinois.com | This space for use by Secretary of State.<br><br>**FILED**<br><br>JUN 1 1 2008<br><br>**JESSE WHITE SECRETARY OF STATE** | **SUBMIT IN DUPLICATE**<br><br>Date: 06-11-08<br><br>Filing Fee:  $10<br><br>Approved: |
| Remit payment in check or money order payable to Secretary of State. | | |

1.  Title and Number of Case:

    Laborers Pension Fund, et al.   _first named plaintiff_

    v.

    Diamond Concrete Specialist, Inc.   _first named defendant_

    Number  08 CV 2830

2.  Name of corporation being served: __Diamond Concrete Specialist, Inc.__

3.  Title of court in which an action, suit or proceeding has been commenced: __USDC, N. Dist. E. Div.__

4.  Title of instrument being served: __Summons and Complaint__

5.  Basis for service on the Secretary of State: (check and complete appropriate box)

    a.  ☑  The corporation's registered agent cannot with reasonable diligence be found at the registered office of record in Illinois.

    b.  ☐  The corporation has failed to appoint and maintain a registered agent in Illinois.

    c.  ☐  The corporation was dissolved on _____, _____; the conditions
        <span>Month & Day</span>         <span>Year</span>
        of paragraphs (a) or (b) above exist; and the action, suit or proceeding has been instituted against or has affected the corporation within five (5) years thereafter.

    d.  ☐  The corporation's authority to transact business in Illinois has been withdrawn/revoked (circle one) on _____, _____ .
        <span>Month & Day</span>         <span>Year</span>

    e.  ☐  The corporation is a foreign corporation that has transacted business in Illinois without procuring authority, contrary to the provisions of the Business Corporation Act of 1983.

6.  Address to which the undersigned will cause a copy of the attached process, notice or demand to be sent by certified or registered mail: __c/o J. Bruckman, Reg. Agt. 14458 Karlov St., Midlothian, IL  60445__

7.  The undersigned affirms, under penalties of perjury, that the facts stated herein are true, correct and complete.

    _Patrick T Wallace_          June 10          2008
    <span>Signature of Affiant</span>      <span>Month & Day</span>   <span>Year</span>

    ( 312 )      692-1540
    <span>Telephone Number</span>

    **TENDERED CHICAGO CORP. DEPARTMENT**

    JUN 1 1 2008

**Return to (please type or print clearly):**

    Fund Counsel, Laborers Pension Fund
    <span>Name</span>
    111 W. Jackson Blvd., Suite 1415
    <span>Street</span>
    Chicago, IL  60604
    <span>City/Town      State      ZIP</span>

    ACCEPTANCE AND "FILED" DATE ESTABLISHED ONLY AFTER REVIEW

    **EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
)
                      Plaintiffs, )      Case No.: 08 C 2830
)
    v. )
)       Judge Lefkow
DIAMOND CONCRETE SPECIALIST, INC., )
an Illinois corporation, )
)
                     Defendant. )

## AFFIDAVIT OF JOHN BRONSON

JOHN BRONSON, being first duly sworn on oath, deposes and states as follows:

1.      I am a Field Representative employed by the Laborers' Pension Fund and

the Laborers' Welfare Fund of the Construction and General Laborers' District Council

of Chicago and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in

the above-referenced action.  My responsibilities include oversight of the collection of

amounts owed by Defendant Diamond Concrete Specialist, Inc., (hereinafter the

"Company").  This Affidavit is submitted in support of the Laborers' Funds' Motion for

Order of Default and to Compel an Audit.  I have personal knowledge regarding the

statements contained herein.

2.      On July 6, 2007, the Company signed an Independent Construction

Industry Collective Bargaining Agreement ("Memorandum") with the Construction and

General Laborers' District Council of Chicago and Vicinity ("District Council") and

1



Laborers' Local 75. A true and accurate copy of the Memorandum is attached hereto as Exhibit C-1. Pursuant to the terms of the Memorandum, the Company is bound to the terms of the relevant collective bargaining agreements incorporated by reference in the Memorandum ("Agreement(s)") and the Funds' respective Agreements and Declarations of Trust.

3.      The Agreement and the Funds' respective Agreements and Declarations of Trust to which the Company is bound require that the Company submit benefit reports and contribution payments by the tenth day of the following month. Payments which are not received within thirty days of this date are assessed liquidated damages in the amount of 10 percent of the principal amount of delinquent contributions, and interest at a rate of prime plus 2 percent as charged by the First National Bank of Chicago from the date of delinquency forward. The Agreement and the Funds' respective Agreements and Declarations of Trust also obligate the Company to submit its books and records to the Funds for periodic audits to determine benefit contribution compliance, and to obtain and maintain a surety bond. A copy of the relevant portions of the Agreement are attached as Exhibit C-2; a copy of the relevant portions of the Amended Agreement and Declaration of Trust creating the Laborers' Pension Fund are attached as Exhibit C-3; and a copy of the relevant portions of the Amended Health and Welfare Department of the Construction and General Laborers' District Council are attached as Exhibit C-4.

4.      The Company has failed to submit its books and records to the Funds for a requested audit for the time period of July 6, 2007 forward.

5.      The Company has failed to obtain and maintain a surety bond in accordance with the terms of the Agreement.

FURTHER AFFIANT SAYETH NOT.

John Bronson

Subscribed and sworn to before me
this 2-1 day of July 2008.

Notary Public

"OFFICIAL SEAL"
JEANNETTE ZECK
Notary Public, State of Illinois
My Commission Expires 09/13/10

3



# CONSTRUCTION & GENERAL LABORERS
# DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between _____ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** The Employer recognizes the Union as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment. If majority recognition previously was granted under Section 9(a) of the Act, it shall remain in effect. Otherwise, recognition under Section 9(a) of the Act shall automatically be granted to the Union without the need for a Board certified election upon the Union's demonstration that a majority of the employees have designated the Union as their exclusive bargaining representative. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension hereof, without written approval from the Union. The Employer shall abide by this Agreement, and all extensions hereof, provided that it employs at least one Laborer during the term of this Agreement or the term of any extension hereof.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Gypsum Drywall Contractors of Northern Illinois/Chicagoland Association of Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.90 per hour effective June 1, 2006; $3.00 per hour effective June 1, 2007; $3.00 per hour effective June 1, 2008 and $3.10 per hour effective June 1, 2009, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2006, the minimum wage rate shall be $31.55 per hour.

4. **Dues Checkoff.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in the amount of 1.75% of gross wages or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. If the Employer contracts or subcontracts any such covered work to any person or proprietor who is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund. The Employer shall further assume the obligations of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer ratifies and confirms the appointment of the employer trustees who shall, together with their successor trustees, carry out the terms and conditions of the trust instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2006 (unless dated differently below) through May 31, 2010, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept the facsimile signatures on this Agreement as if they were the original signatures.

34789

Dated: _July 6_____, 20_07_

ACCEPTED:

Laborers' Local Union No. _75_

By: _Stan Davis_

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _James P. Connolly, Business Manager_

By: _Frank Riley_
Frank Riley, President & Secretary-Treas.

For Office Use Only: _____

_Diamond Concrete Specialist_
(Employer)

FEIN No.: _35-2300653_

By: _Richard Lundy owner_
(Print Name and Title)

_Rick Lundy_
(Signature)

_14445 Kedvale_
(Address)

_Midlothian IL 60445_
(City, State and Zip Code)

_1-708-489-3485_
(Telephone/Telefax)

RECEIVED
JUL 20 2007
FIELD DEPT.
Rep.

EXHIBIT
C-1

Effective June 1, 2006     WHITE - LOCAL UNION     •     CANARY - TRUST FUND     •     PINK - DISTRICT COUNCIL     •     GOLD - EMPLOYER

JUNE 1, 2006 TO MAY 31, 2010

# BUILDING AGREEMENT

between the

## CONCRETE CONTRACTORS ASSOCIATION OF GREATER CHICAGO

and the

## CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

**NOTES**

EXHIBIT
C-2

(d) The terms and conditions of this Agreement shall apply to all Bargaining Unit work performed by the Employer performing such work indirectly if such work is performed by any business entity controlled by the Employer, of if the Employer is a corporation, controlled by the person who controls the Employer.

(e) The Employer shall notify the Union of all non-signatory subcontractors prior to such subcontractors commencing work. Upon request of the Union, any sub-contractor that fails to become signatory to the Union labor contract within 24 hours of the Union's request shall be removed from the job site.

(f) The Employer shall not be liable for the wages and fringe benefits owed by the subcontractor. However, should the Employer either fail to timely notify the Union of a non-signatory subcontractor, or fail to remove the non-signatory subcontractor within 24 hours upon the Union's request, the Employer shall pay to the Union, and its employees on the jobsite, an amount to equal to the difference between the subcontractor's aggregate wages and benefits and the amount set forth in this Agreement for the entire period that the subcontractor works with a Union agreement on the job site.

## Article VIII
## WAGES

Paragraph 1. The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2006 to and including May 31, 2010, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include an increase of $2.90 per hour effective June 1, 2006 to May 31, 2007 for a wage rate of $31.55 per hour which includes the dues deduction. June 1, 2007 to May 31, 2008, $3.00 per hour increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. June 1, 2008 to May 31, 2009, $3.00 per hour increase to be

allocated between wages and fringe benefits by the Union in its sole discretion. June 1, 2009 to May 31, 2010, $3.10 per hour increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion.

## CLASSIFICATION

Employees shall receive the following hourly premiums in the classifications set forth below:

| Classification | Premium |
| --- | --- |
| Building Laborers | $0.00 |
| Fire Brick Work and Boiler Setter Laborers | $.325 |
| Jackhammerman (On Firebrick Work Only) | $.575 |
| Boiler Setter Plastic Laborers | $.45 |
| Chimney Laborers (Over 40 Feet) | $.10 |
| Chimney on Firebrick | $.35 |
| Scaffold Laborers | $.10 |
| Caisson Diggers | $.35 |
| Jackhammerman | $.225 |
| Power Driven Concrete Saws, Other Power Equipment | $.225 |
| Stone Derrickman and Handlers | $.20 |
| Fireproofing and Fire Shop Laborers | $.00 |
| Well Point System Men | $.35 |
| Pumps for Dewatering, other Unclassified Laborers | $0.00 |
| Windlass and Capstan Person | $.15 |
| Cement Gun Nozzle Laborers (Gunite) | $.15 |
| Cement Gun Laborers | $.075 |
| Plaster Laborers | $0.00 |
| Construction Specialist | $0.00 |

Sub-Foremen shall receive $.75 premium wages over and above top Laborers' Scale under his supervision.

Building Labor Foremen shall receive $1.50 premium wages over and above top Laborers' Scale under his supervision.

General Foremen shall receive $2.00 premium wages over and above top Laborers' Scale under his supervision.

Superintendents shall receive $3.00 premium wages over and above top Laborers' Scale under his supervision.

Dosimeter Use: A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

Power Pac: When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

Asbestos Use: Regular rate shall apply. No premium shall be paid.

Paragraph 2. APPRENTICE PROGRAM

Section 1. APPRENTICE COMMITTEE: The Employer hereby agrees that the Joint Apprenticeship Training Committee (JATC) shall have the authority to establish rules for the apprentice program, including penalties for violations of the apprenticeship rules, which are incorporated herein by reference. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Laborers' Apprentice and Training Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreement and Declaration of Trust.

Section 2. APPRENTICE PROGRAM FUNDING: The apprenticeship program administered by the JATC shall be self sustaining. In addition to the sums set forth in Article IX, Paragraph 2 of the Agreement, effective

January 1, 1999, or on the date when the Association elects to participate in the program, whichever is later, the Employer shall also contribute to the Training Fund an additional contribution of five cents ($.05) per hour for each hour worked by all employees covered by this agreement, or a lesser amount as may be determined by the JATC. Effective June 1, 1999 and June 1, 2000, or on the date when the Association elects to participate in the program, whichever is later, the contribution shall be increased as determined by the JATC, but in no event shall the aggregate contributions under this paragraph 2 exceed five cents ($.05) over the term of this Agreement.

Section 3. The term of apprenticeship shall be 4,000 hours, or two years, whichever occurs later. All Health and Welfare, Pension, Training Fund, Industry Advancement and other contributions required under this Agreement will commence immediately upon employment of an apprentice. Union affiliation will be required after seven (7) days of employment.

Section 4. The wages per hour paid to apprentices shall be as follows:

1st six (6) months: . 60% of journeyman (base) wages
2nd six (6) months: . 70% of journeyman (base) wages
3rd six (6) months: . 80% of journeyman (base) wages
4th six (6) months: . 90% of journeyman (base) wages
After 24 months: .. 100% of journeyman (base) wages

Section 5. The ratio of journeymen to Apprentices shall be six (6) laborer journeymen to one (1) laborer apprentice on a company-wide basis, with no more than twenty percent (20%) of laborers being apprentices on any one job site of the Employer. Employers who employ a maximum of between one (1) and five (5) laborer journeymen shall be entitled to one (1) laborer apprentice, who may be assigned to job sites irrespective of the twenty percent (20%) job site maximum specified in this provision.

Section 6. Referral of apprentices will be through the Local Union with jurisdiction over the job site. All apprentices must be referred by the Local Union from approved JATC apprentices. Employers requesting apprentices will be assigned an apprentice from the available JATC apprentice pool. The JATC can limit the number of apprentices to that which is adequate for current needs and which can be properly trained by the program. Employers may recall their laid off apprentices to work, provided that the Employer complies with the ratios set forth in Paragraph 5. All apprentices must report their hours weekly to the JATC. All apprentices will be tested for the presence of illegal substances at the time they enter the apprentice program.

Paragraph 3. WELFARE: Beginning the period from June 1, 2006 to May 31, 2007, the Employer agrees to make Health and Welfare contributions of $7.46 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages herein stipulated. This $7.46 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training and other funds to be allocated from the economic package for that year. (See Article VIII, Paragraph 1)

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreements and Declarations of Trust.

16

Paragraph 4. PENSION: Beginning June 1, 2006 the Employer agrees to make a pension contribution of $4.84 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages and welfare payments herein stipulated. This $4.84 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training and other funds to be allocated from the economic package for that year. (See Article VIII, Paragraph 1)

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreements and Declarations of Trust.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered Employees.

The failure of the Employer to contribute to the said Welfare or Pension Funds when the same is established, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of

17

the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during this grace period shall be assessed liquidated damages amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees place the account in the hands of legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement.

18

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

**Paragraph 5. Section 415 Excess Benefit Fund.** A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

**Paragraph 6. SUPERVISORS:** To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 3 and 4 of Article VIII of this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management

19

Relations Act, as amended; and who at one time were Employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 3 and 4 of Article VIII hereof.

**Paragraph 7.** Appointment of Trustees to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund. The parties agree that the Employer-appointed trustees of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund and training and apprentice funds to which Employers are required to contribute shall be appointed solely by Employer associations that enter into collective bargaining agreements with the Union requiring contributions to such funds ("Signatory Associations"). It is further agreed that the Trust Agreements establishing such funds shall be amended to replace any Employer association that appoints a trustee and does not have a labor agreement with the Union, replacing it with a Signatory Association. The union and Signatory Associations shall meet within 30 days of the effective dates of agreements covering a majority of Fund participants to review the appointment of Employer Trustees of the funds. It is agreed that the numbers of hours contributed by Employers represented by Signatory Associations compared to contributions by other Signatory Associations during the preceding year shall be the basis for assigning the number of trustee appointments. If such parties are unable to agree on the Signatory Associations appointments to be made by each Signatory Association the dispute shall be submitted to expedited arbitration under Subpart D of the Policies and Procedures of the Federal Mediation and Conciliation Service.

**Paragraph 8.** Article III Section 2 of the trust agreements of the Health and Welfare Department of Construction and General Laborers' District Council of

Chicago and Vicinity and the Laborers' Pension Fund shall be amended to include the following: "Association-Contributing Employers must be full-time employees of membership. A Contributing Employer shall be defined as an Employer that has employed an average of five (5) or more Laborers performing bargaining unit work for whom contributions have been made per month in each of the previous three (3) calendar years."

**Paragraph 9.** The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Vacation Fund, a jointly-trusteed vacation plan established for the purpose of providing income to members during their winter layoffs. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

**Paragraph 10.** The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Annuity Fund, a jointly-trusteed defined contribution plan providing a supplemental retirement benefit. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

**Paragraph 11. Special Rules for Bonding.** An employer that is owned or managed, in whole or part, by an individual who currently has or previously had in the last ten (10) years ownership or principal managerial responsibility for another contributing employer that currently is or ceased doing business when delinquent to the Funds shall be required to post for the benefit of the Funds an additional cash bond or obtain a surety bond from a Fund-approved insurer in an amount equal to twice the amount of the other contributing employer's delinquency. This amount may be adjusted by the Benefit Fund Trustees for each individual employer. This bond shall be in addition to and separate from the bond required elsewhere in this Agreement.

21

**Paragraph 12. OUT OF TOWN WORK.** When Laborers who reside or work in the nine-county geographic area covered by this Agreement are asked to work at locations outside these nine counties, the Employer shall continue to report and pay benefits for all hours worked outside the nine counties. If the work performed is covered under a labor agreement with the Laborers' International Union of North America or its affiliates, the Employer shall report and pay the benefit contributions to the fringe benefit fund identified, and the contribution rates specified, under that labor agreement. If the work performed is not covered under a labor agreement with the Laborers' International Union of North America or its affiliates, then the Employer shall report and pay the benefit contributions to the fringe benefit funds identified, and the contributions rates specified, under this Agreement.

## Article IX
## BONDING

All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this Agreement.

The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;
(b) Termination of business;
(c) Change of name commonly used in business operation;
(d) Change in form of business organization;
(e) Incorporation of business;
(f) Dissolution of corporation;

22

(g) Name and business organization of successor;
(h) Admission to or withdrawal from any association operating as a multi-Employer bargaining unit.

## Article X
## INDUSTRY FUND

**Paragraph 1.** Each Employer shall pay the amount of seven cents ($.07) for each hour worked by those employees covered under this Agreement to the CCA Industry Advancement Fund ("Industry Fund") and shall also pay the amount of six cents ($.06) for each hour worked by those employees covered under this Agreement to the Chicago-area Laborers-Employees Cooperation Education Trust ("LECET") and shall also pay the amount of twelve cents ($.12) for each hour worked by those employees to the Laborers' District Council Labor-Management Cooperation Committee ("LDC/LMCC").

**Paragraph 2.** The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Industry Fund, LECET, and the LDC/LMCC, and all amendments thereto, and agrees to be bound by all actions taken by the Trustees of those funds pursuant to the Agreement and Declaration of Trust of those funds.

**Paragraph 3.** Should any Employer fail to make payments to the Industry Fund, LECET Fund or LDC/LMCC, the Employer shall be liable for and pay, in addition to the delinquent contributions, interest at a rate of ten percent (10%) per year for such delinquencies, and to pay all costs of collection, including audit expenses and attorney fees and costs.

23

# RESTATED AGREEMENT

### AND

# DECLARATION OF TRUST

#### CREATING

# LABORERS' PENSION FUND

With Amendments Through
May 31, 2002



EXHIBIT

C-3

(b)     To enforce the provisions of the Pension Plan and the rules and regulations adopted by the Trustees in a uniform manner with respect to individuals similarly situated.

(c)     To determine questions arising under the Pension Plan or this Agreement, including the power to determine the rights of Employees and their Beneficiaries, and their respective benefits, and to remedy ambiguities, inconsistencies or omissions.

## ARTICLE VII

## FUNDING PENSION PLAN BENEFITS

Section I.     IN GENERAL.     In order to fund the benefits provided under the Pension Plan, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees at the times required by that agreement.  The rate of contributions shall be determined by the applicable Collective Bargaining Agreement or Participation Agreement, together with any amendments, supplements or modifications thereto.  Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be the same as the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union which covers Employees performing similar work.  No

-24-

Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the  provisions of a Collective Bargaining Agreement or Participation Agreement  and any such contract or agreement shall be null and void.  It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer has entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation  Agreement.  All contributions shall be paid in the manner and form required by the Trustees.

Section 2.    DEFAULT IN PAYMENT OF CONTRIBUTIONS.  Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments.  The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.  Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment.  The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of  10% of the amount of the contributions which are owed.  All Employers party to or otherwise bound by this Agreement acknowledge that the

liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10%, waiving the necessity of any additional proof thereof.  In addition, the delinquent contributions and any payments owed by an Employer pursuant to an installment agreement, shall bear interest up to the prime rate of interest plus two points charged by the Fund's custodian bank (or any other bank selected by the Trustees)  or such other lawful amount as determined by the Trustees from the due date until totally satisfied.  The Trustees are hereby given the power and authority to delegate the collection of contributions to a Collection Committee, which, in its discretion, may assess a lesser or greater amount or waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee  and to compromise claims for delinquent contributions and related  liabilities and collection costs where appropriate to settle cases favorably for the Fund.  The Collection Committee may include trustees of the Laborers' Welfare Fund as members of the Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including court fees, audit fees, investigative costs, etc. The term "reasonable attorneys' fees" as used herein shall mean all

-26-

attorneys' fees in the amounts for which the Trustees become legally obligated including recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees, in lieu of any cash deposit, a bond in an amount not less than Five Thousand Dollars ($5,000.00) or in an amount consistent with the terms of the current collective bargaining agreements. In the event an Employer is repeatedly delinquent in its contribution payments to the Pension Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current collective bargaining agreements, in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3.    REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such

-27-

other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may at any time have an audit made by an independent certified public accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Pension Fund forward unless given written authorization by the Administrator upon request to destroy said record. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

## ARTICLE VIII

## FILING CLAIMS AND REVIEW OF DENIALS OF CLAIM

Section 1.     FILING OF A CLAIM.     Claims for the payment of any benefits provided by the Pension Plan shall be filed, in writing, in accordance with the Rules and Regulations set forth in Article 7 of the Pension Plan.

-28-

## ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1.   Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2.   Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3.   Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4.   Cash disbursement journals and general ledgers.

5.   Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6.   Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7.   Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8.   Daily time records filed by employees or supervisors.

9.   Source documents and lists of job codes and equipment codes.

10.   Certified payrolls for public sector jobs where such payrolls are required.

11.   Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12.  Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13.  If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above.  However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above.  In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.  The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

2

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

### As Adopted by The Boards of Trustees
### Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers**. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers.** Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

May-09-2007 12:25pm    From-Laborers'Pen & Wel Funds    +    T-351    P.002/009    F-615

# AMENDMENT TO THE
## RESTATED AGREEMENT AND DECLARATION OF TRUST
## CREATING LABORERS' PENSION FUND

WHEREAS, Article XII of the Restated Agreement and Declaration of Trust ("Trust Agreement") of the Laborer's Pension Fund (the "Fund") provides that the Board of Trustees have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching

1

themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

## I.

The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

## II.

The following is added as Section (4) to Article VII, "Funding Pension Plan Benefits":

"Section 4.  ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a)    EMPLOYER OWNED BY DEADBEAT EMPLOYER.  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)    EMPLOYER OPERATED BY DEADBEAT EMPLOYER.    Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)    PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION.  The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund. The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable,  as the Employer deems appropriate in order to avoid liability under this Section.  Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable.  Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)    MISCELLANEOUS PROVISIONS.  The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer. "

III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

3

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

| | | | |
|---|---|---|---|
| _signature_ | 9-18-06 | _signature_ | 9/13/06 |
| **CHARLES COHEN** | **DATE** | **JOSEPH COCONATO** | **DATE** |
| _signature_ | 9/18/06 | _signature_ | 9/18/06 |
| **ALAN ESCHE** | **DATE** | **JAMES P. CONNOLLY** | **DATE** |
| _signature_ | 9/18/06 | _signature_ | 9/18/06 |
| **ROBERT C. KRUG** | **DATE** | **J. MICHAEL LAZZARETTO** | **DATE** |
| _signature_ | 9/18/06 | _signature_ | 9/18/06 |
| **RICHARD E. GRABOWSKI** | **DATE** | **FRANK RILEY** | **DATE** |
| _signature_ | 9/18/06 | _signature_ | 9/18/06 |
| **DAVID H. LORIG** | **DATE** | **LARRY WRIGHT** | **DATE** |
| _signature_ | 9/18/06 | _signature_ | 9-18-06 |
| **GARY LUNDSBERG** | **DATE** | **JEFF ZIEMANN** | **DATE** |

4

# RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

Restated through
July 1, 2003

1



## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

Section 1. IN GENERAL. In order to fund the Benefits provided for by this Agreement each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement. The rate of contributions shall be determined by the applicable Collective Bargaining Agreements or Participation Agreements, together with any amendments supplements or modifications thereto. Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work. No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

Section 2. DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Welfare

Fund. The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit fees and investigative costs. The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject. In the event an Employer is repeatedly delinquent in its contribution payments to the Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

16

## ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1.   Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2.   Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3.   Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4.   Cash disbursement journals and general ledgers.

5.   Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.            .

6.   Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7.   Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8.   Daily time records filed by employees or supervisors.

9.   Source documents and lists of job codes and equipment codes.

10.   Certified payrolls for public sector jobs where such payrolls are required.

11.   Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12.  Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13.  If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above.  However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above.  In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.  The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers**. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers**. Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

1

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

AMENDMENT TO THE
RESTATED AGREEMENT AND DECLARATION OF TRUST
OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND
GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

WHEREAS, Article XI of the Restated Agreement and Declaration of Trust ("Trust Agreement") provides that the Board of Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Fund") have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

1

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

## I.

**The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":**

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

## II.

**The following is added as Section (4) to Article VI, "Employer Contributions":**

"**Section 4. ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.**

(a)   **EMPLOYER OWNED BY DEADBEAT EMPLOYER.**  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)   **EMPLOYER OPERATED BY DEADBEAT EMPLOYER.**  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

2

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)    PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION.   The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund.  The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section.  Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable.  Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)    MISCELLANEOUS PROVISIONS.   The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer. "

III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

3

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

CHARLES J. GALLAGHER                DATE

JAMES P. CONNOLLY          9/19/06
                                    DATE

ALAN ESCHE                 9/19/06
                           DATE

RANDY DALTON               9/19/06
                                    DATE

RICHARD E. GRABOWSKI       9/19/06
                           DATE

MARTIN FLANAGAN            9-19-06
                                    DATE

DAVID H. LORIG             9/19/06
                           DATE

LIBERATO NAIMOLI           9/19/06
                                    DATE

DENNIS MARTIN              9/19/06
                           DATE

SCOTT PAVLIS               9/19/06
                                    DATE

TIM J. SCULLY              9/19/06
                           DATE

FRANK RILEY                9/19/06
                                    DATE

4

## CERTIFICATE OF SERVICE

The undersigned certifies that he caused a copy of the foregoing Motion for Order of Default

and to Compel an Audit to be served upon the following persons, via U.S. Mail, this 22nd day of

July 2008.

Diamond Concrete Specialist, Inc.
c/o Joseph H. Bruckman, Registered Agent
14458 Karlov St.
Midlothian, IL   60445

Diamond Concrete Specialist, Inc.
c/o Richard Lundy
14445 Kedvale
Midlothian, IL  60445-2716

/s/ Patrick T. Wallace

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LABORERS' PENSION FUND and** | ) | |
| **LABORERS' WELFARE FUND OF THE** | ) | |
| **HEALTH AND WELFARE DEPARTMENT** | ) | |
| **OF THE CONSTRUCTION AND GENERAL** | ) | |
| **LABORERS' DISTRICT COUNCIL OF** | ) | |
| **CHICAGO AND VICINITY, and JAMES S.** | ) | |
| **JORGENSEN, Administrator of the Funds,** | ) | |
| **Plaintiffs,** | ) | **Case No.:  08 C 2830** |
| **v.** | ) | |
| | ) | **Judge Lefkow** |
| **DIAMOND CONCRETE SPECIALIST, INC.,** | ) | |
| **an Illinois corporation,** | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

This matter having come to be heard on the Motion of Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and James S. Jorgensen, Administrator of the Funds ("Funds") Order of Default and to Compel an Audit, due notice having been given, and the Court being fully advised in the premises,

**IT IS HEREBY ORDERED**:

1.    That Defendant Diamond Concrete Specialist, Inc. is in default.

2.    The Company is hereby directed to promptly submit its books and records for an audit by the Funds for the period of July 6, 2007 forward.

3.    The Company is hereby directed to obtain and maintain a surety bond in accordance with the terms of the collective bargaining agreement.

FURTHER, the Court retains jurisdiction to enter judgment in sum certain upon the completion of the audit, plus attorneys' fees and expenses and such other and further relief as may be just and appropriate.

ENTER:

_____
The Honorable Joan Humphrey Lefkow
United States District Court Judge

Dated:_____